Thank you, Your Honor. In Interpol's view, the core issue of this appeal is that the District Court's construction, respectfully, doesn't line up that way. The District Court's construction treats as the central object noun, polymer, and then it modifies polymer with additional language addressing the liquid and polymer continuous restrictions. In our view, that is not the same as the structure our patentee gave in his claim. By analogy, if a claimant writes, I claim as my invention a red truck bearing a hose for fighting fires, that's categorically different from claiming a red hose on a truck for fighting fires. All the concepts are in play, but the structure is different. And respectfully, we think that's the type of error the District Court made. And what is your construction? So for the term liquid phase, we urge... We're talking about a single phase, a single phrase. What is the totality of your construction? So the totality would be a phase, which is polymer or a mixture of polymer and water, or I'm sorry, polymer and carrier fluid, that takes the shape of its container and has a fixed volume, that's the liquid side, and is characterized by an accumulated network of polymers so that you can go from one side to the other in the polymer. That's the polymer continuous portion. Any given polymer, say, that has 15 monomers in it would be, in itself, continuous. And yet, I assume you think that this term does not include a carrier fluid polymer combination where all the polymers, each one is continuous, but highly dispersed. Why? First, do you agree that that would not come within the term? I don't think that would come within the term. And so what is it about your construction that would exclude that? Respectfully, Your Honor, I don't think it's our construction that excludes that. I think it's the claim that excludes that. We're construing polymer continuous liquid phase. That phase is going to be, in this claimed method, displaced into the formation. So it's that act, we look at what we're displacing, and we say, does it meet the definition of a polymer continuous liquid phase? So if that, what we're displacing, is polymer or a mixture of polymer and carrier fluid that has a fixed volume, takes the shape of its container, and is characterized by an accumulation of uninterrupted polymer across this region of interest, then we would say that aspect of the claim is satisfied, Your Honor. Setting aside for a minute the other words in the disputed term, what do you mean by phase? I mean, there's a lot of different uses of the word phase in the patent specification, polymer phase, a liquid phase. You know, phase has a general understanding of being liquid, gas, solid. What do you think phase means? Because phase is the thing, I guess, the noun you're saying that is modified by those adjectives. It seems like a weird use of the word phase. So certainly there are dictionaries in the record that use phase as a noun to describe a liquid, a solid, some homogenous material of reference. That's not the use in this patent. There are many instances of phase, as Your Honor noted. I wouldn't say they are all different. I would say they all use phase the same, but in every instance it's restricted by some attached modifier, polymer phase, continuous phase, external phase. The phase itself is used as a general term of reference to identify some component of the well system, some material component. If we're addressing a single component, we could just say the polymer phase. If we're addressing some broader component, we might address the entire liquid phase. We might address an external phase if it's dispersed. We might address an internal phase if the thing we're talking about is continuous. Can I ask you something? Why is it that the patent talks about discontinuous and says or internal, and then it says continuous or external? I don't understand what internal and external is in that context. Are those synonyms? I think within this discussion of analyzing a mixture for a discontinuous aspect and a continuous aspect, they are synonyms. Internal means the phase or the aspect of the system that doesn't extend uninterrupted. It's broken up in some way like oil droplets in water. External means the larger, more extensive phase. If I'm a mixture of oil droplets and water, it's the water. There's a name. It's not solvent. It's the containing fluid. It's called the external phase or the continuous phase. Are these terms in this technology in your view? I think that they have ordinary meaning in this field. I don't think the patent is using either continuous or internal or external in any kind of new or non-standard fashion. Before the district court, we had some dictionaries that went into continuous. I don't recall if they made it into the record up here. I'm not sure they were cited by the parties, but they were in the record before the district court. I think we may have colored that in a little, but I do recall one dictionary did describe tracing a path from one place to the other. I think the ant may have been color I added at one point. What is your best support and specification for your interpretation of continuous? Within the specification, I think we have a lot of support for continuous. I think chief is figure 2E and 2D. Show the polymer in an uninterrupted fashion moving around or extending around. I think also the bottom of column 7 and the top of column 8 describe how this invention works by accumulating polymer, bringing it together. When it goes in the wellbore, it's in pellets or particles that are not brought together. They must be brought together below. Is that one embodiment that's described, or does the patent always talk about putting the polymer in essentially solid form? Certainly the claim requires putting the polymer in solid bulk form. That's step A of the method. I believe all embodiments describe putting it in solid bulk form. Columns 7 and 8 specifically, I would say it's one embodiment with several variations. There's a particular accumulation is by packing the particles together, that close packing. That's how you get solid particles into this configuration. You pack them together in some way. Column 8, line 33 describes using solid liquid separation to accomplish it. You're going to separate the liquid, move the carrier fluid off this way. You're going to have your polymer particles over here. They're going to be brought together. They're going to accumulate that in bottom of column 7 and the top of column 8 is practicing the invention. Your number day characterizes in their brief your ability to travel across and not have to go off the polymer as meaning uninterrupted. Do you agree with that characterization? It seems to me like it's probably a more technical way to describe being able to travel across. We feel good about uninterrupted. I actually think at this stage between these parties, the ordinary meaning of continuous is not disputed. I think we agree it means uninterrupted or we said accumulated network, which I think is getting at the same idea. Clearly we have a dispute over applying that adjective, what it applies to and how it applies to it. I think the patent, and we put this in a table on page 27 in our yellow brief, has a lot of evidence saying that applying an adjective to the phase as the claim does is different from applying an adjective to the Let me just try to ask the question that I was trying to formulate right at the beginning. How much of the polymer needs to be uninterrupted? Again, I think it's a region of interest type inquiry. We look at what's being displaced and then in that volume that's being displaced, does the polymer extend uninterrupted across it? I don't think there's a quantitative measure of so many particles, so many milliliters, something like that. I think this is true jury inquiry, where it's going to look at the displacement from the wellbore into the formation, as the claim describes, and say is what's being displaced a polymer continuous liquid phase? How would a jury do that? I think a jury would take technical evidence that we would gather from Schlumberger about its operations. They would look at the materials going in, the timing, the active displacement, how it's accomplished, and then they would hear expert testimony and fact testimony about whether what's being displaced is in fact a polymer continuous liquid phase under the appropriate construction. I think that's classic jury. Evidence, for example, that the polymer encapsulates the fluid? I think if there were evidence of that kind, technical material that said, yes, in the Schlumberger operation the polymer is going to encapsulate the fluid, I think that's something jury would take into account. I think if there was percent volume of the amount of polymer. I think percent volume, which is where the district court went, then you have to start taking... Part was distinguished in the prosecution history, right? At least one way. Anyway, I'm sorry. Not sure I agree with that latter part, but as to the percent volume, I think at that point, one would have to think about some things like, well, what's the character of the polymer that's going down? What's its shape? I think if it were 52 percent by volume, and these are spheres which pack very closely, I think at that point you could say, yeah, that probably is uninterrupted. We can imagine other pellet or particle shapes where the given percent volume might not be as informative as to whether it's polymer continuous or not. This is the kind of thing that is classic jury function, is to look at the evidence, have a clear understanding that polymer continuous means uninterrupted, and then try to weigh from the technical material, is it in fact uninterrupted at the time it moves from the wellbore into the formation that created the fractional pressure. About liquid phase, what exactly does that mean? Are we talking about a phase that exhibits only liquid characteristics? And isn't there support in the patent for the 50 percentage number that the court decided on? So I'm going to take, I think there's two questions there. I'll take the second one first. The 50 percent limitation, certainly there is a reference to the 50 percent limitation in the middle of column eight. I was just discussing that with Judge Toronto. That's one embodiment of the patent. It's an embodiment specifically where he says these particles are close packed. That's in the immediate preceding sentence. For close packed particles, I think the 50 percent restriction makes sense. We can readily imagine that. We imagine a different particle, say a long fibrous particle, which would be one available for use here. Then you could look like, get a fishnet type structure where you have the necessary uninterruptedness, but the volume percentage is a quantitative restriction like the district court did. We think that's an aspect of the district court's error. I'm running short on time. May I answer the question about liquid? As to the meaning of liquid, we've given what we think is a classic physical definition. It has a fixed volume. It takes the shape of its container. I don't hear the appellee disputing that that's the classic physical definition of a liquid. We would then say, for the inquiry here, is there a phase that is liquid? If there is, then that aspect of the claim is satisfied. If there isn't, then it isn't. In our view, a phase could be polymer or a mixture of polymer and carrier fluid. The liquidity could come from the polymer that's available, but it could also come from some other aspect of the system such as from carrier fluid. Can I ask you, what, if anything, does the patent or anything else in our record tell us about the temperatures that would be assumed or possible either at the top of the well or down at the bottom of the well near the perforations? I think the answer could be really not much. I think the answer is not much, but it's not zero either. I think what this patent does is incorporate by reference a previous patent by the same, one same inventor, some other inventors too. The lactide one? The polylactide? The 964 patent, right. And that patent was doing benchtop experiments looking at how these polymers would behave in relevant temperatures. And the relevant temperatures, I mean, this was Exxon Mobil at the time doing the work, their relevant temperatures were the underground temperatures. So we can glean something there. Which are in what kind of range? Well, you made a point about the difference between the glass transition temperature of 55 degrees centigrade and the melting temperature, at least I think of that one, at 180 degrees centigrade. And so I'm trying to understand if we can infer anything about the liquid or non-liquid state of the polymer from any information we have about the expected temperatures. So respectfully, right, I think this is part of the reason why we'd say this claim is not about the liquidity of the polymer. This claim is about the liquidity of the phase. And in that context, this issue of how polymer behaves at temperature kind of moves to the side. We do take the point, I think the point we're making in the briefing is that polymers are not like classical crystals. As they are heated, they don't do an immediate phase transition from solid to liquid. There's a softening that occurs over time. My understanding of the physics here is that these wells, underground it gets pretty hot, but it doesn't necessarily get hot enough to like melt the polymer. And I think it's because of this that we think the references here to liquid are properly assigned to the phase and not to the polymer. And the phase, just to make sure, I had asked you earlier what the phase was. I think your view is that the phase is the whole mixture including the disbursement fluid and the polymer and any profit that might be there. Is that true? Or I'm just trying to understand what you mean by phase. I think phase is always used as a term of reference. It's not, I don't think there's any place in the patent where it just says let's talk about a phase. It always says let's talk about a specific phase modified some way. Phase is the reference used to receive that modifier. So it refers to well material. Potentially it could include all the well material. It could go that broad depending on what modifier is attached to it. But for a term like polymer continuous phase, it is addressing an Okay, let's hear from the other side now. Thank you. Mr. Grant, you reserve two minutes of your time. Is that for the cross-claim? It's for the cross-appeal and if the jurisdictional issues aren't forward then I would imagine foregoing that, your honor. Okay. Thank you. Judge Stoll, I want to answer your question because you asked the right one. Discontinuous and internal are synonymous. Continuous and external are synonymous. So now the question is what does that mean in the context of the phrase that we're dealing with? A liquid phase. What that means is in a liquid phase where everything's liquid, the continuous component is the one that's doing the carrying and the discontinuous is the one that's being carried. That's why if all you're measuring is a liquid, the 50% turnover point between continuous and discontinuous makes sense. So if I can describe what the patent claims and what's set out clearly in the specification. You have a well bore. They're putting polymer pellets in at the top. That's described in claim 24 as a slurry and that the patent makes clear the polymer is in a discontinuous phase because you've got this fluid, usually brine or water, that's carrying the pellets. That's why it's discontinuous at that stage. And then what the patent teaches is those pellets will then accumulate at a specific place in the well bore where the perforations are. The perforations are in the metal and concrete plate. You're then going to go into the formation and fracture the formation. At that stage what the patent teaches in column 8 is it expressly describes the transition from discontinuous to continuous and it says that you know your polymer phase becomes a continuous liquid phase when the polymer liquid becomes more than 50% by volume. You also asked a question about figure... What requires the polymer to be 50% of the polymer to be in a liquid state? Yeah, it's the continuous component. So my friend on the other side said, well, it's really a question of looking at the claim. We have a phase. What kind of a phase? Solid, liquid, or gas? It's liquid. Okay, now what's the modifier? It's a continuous liquid phase. So what that means is within this liquid component, this overall mixture of liquid, the thing that we're talking about needs to be continuous and that means it needs to be more than 50% by volume because at this stage that continuous component is going to do the carrying of what happens next and it describes it as polymer. Your view, as I understand it, is that that the water or whatever other liquid it is, unless it itself is at least 50% by volume. That's right and in fact, I think you asked a question about figure 2e and it's important. I want to refer, my friend referred to the yellow brief at 27. Let's look at the yellow brief at 25. There's a statement in here that I think sets up some of the confusion and it's candidly just an erroneous quote from the patent. If we look at the last sentence of the yellow brief at 25, it says figure 2e depicts a quote polymer continuous liquid phase 29. That's erroneous. You'll find that nowhere in the patent but if you go to the next page immediately following 26 of their yellow brief, you see figure 2e as we colorized it and then you see a correct quote which explains and I think will answer your question, Judge Stoll. It's a correct quote but with an incorrect emphasis. What it says is figure 2e illustrates element 29. That's emphasized. Now the emphasis goes away. Of what? Of the propent laden, then it tells us polymer continuous liquid phase fracturing fluid. 29 is not the polymer continuous liquid phase and I think candidly, it's my fault for not explaining this well enough below. I think that's why Judge Gilstrap misapprehended our position a little bit. 24 is the polymer continuous liquid phase. 29 is the propent laden polymer continuous phase fracturing fluid. What is it made up of? It tells us. Can I interrupt you for a second? The patent doesn't say though that 24 is the polymer. I think it does say it's polymer continuous but I don't see where it says it's the liquid phase. I believe it says it's polymer in pellets 25. Let me see if I can clarify it. No, no. I think respectfully you're just mistaken. So what it says in column 9 is the polymer continuous liquid phase fracturing fluid is formed when the polymer 24. Now if you look at figure 2c, you see the pellets. Those are the ones that go in at the top and then it says it becomes the column 4. Column 4 is describing this. And column 4 says figures 2a through 2e illustrate pellets of degradable polymer with and without propent before and after the coalescence of the pellets to form the polymer continuous liquid phase. And that's not just notable for what it says, Your Honor. It's even more notable because in the provisional application, that's not what it said. In the provisional application, this is in the appendix at 2229, the original application said that figures 2a through 2e were depictions of a polymer continuous phase. And the patent examiner said that's not good enough. You're not telling us what the state of matter is. You need to define it. And the patentee changed the language describing figures 2a through 2e and changed it from polymer continuous phase to polymer continuous liquid phase. So if you look at figure 2e, what you see is a continuous phase of polymer, 24, used to be rigid solid pellets, has now become liquefied in that continuous phase. It's carrying the propent and it's also going to carry some of that carrier fluid as it does the fracturing. That's precisely what's transitioned from discontinuous to continuous phase. And it's exactly what's set forth in claim one as well as in claim 24 when it talks about the conversion of the slurry. The slurry is the discontinuous polymer pellets with carrier fluid conversion into a continuous liquid phase. And that's exactly what column four tells us that figure 2e is. There's another important point. Where do you get the support for that continuous means liquid? It has to be liquid. No, no. So I get it from two places, your honor. So first of all, what is continuous? A liquid phase. That's in the claim language itself. Second of all, if the court looks, in addition to the one place in the prosecution history that I already pointed out, there's a second place in the PLA, which is just a type of degradable polymer. It says it's initially a rigid solid. It degrades into a compliant thermoplastic mass, then to a sticky semi-solid, then to a viscous liquid, and then it talks about it goes from the wellbore into the formation as a liquid. Now, if you look at the prosecution history again, this is again appendix 2229, the provisional application originally said the degradable polymer may begin as a rigid solid that's placed in the wellbore where it becomes a thermoplastic, having a selective viscosity. And so gels have a viscosity, but gels aren't necessarily liquids. The patent examiner said that's not clear enough. And so there was an amendment, and that very language, thermoplastic, was changed, and it said the present invention starts as a rigid solid, it's placed in the wellbore where it becomes a viscous liquid that can be injected into the perforation. Can I ask you, you said to look at page A2229 for the prosecution history? 2229. 2229? Yes. That just appears to me to be the patent application. Are you saying that's the... It's the provisional application. Okay. So the provisional application had that language, and then it was required to be changed, and the site for that is 2232, with the first one that I talked to you about on the figure 2E, and the one that I've just been discussing is at 2233. So your question, Your Honor, is the claim language talks about what is continuous. It's a liquid phase. By the same token, if you look at the clarification, which is, in our view, just a clarification of the plain meaning of what the word continuous means in a phase where the phase is entirely liquid, well, how does something become the majority, the external, or the thing that's doing the carrying when what you have is entirely liquid? Well, it's got to be more than 50 percent. Can I ask you something? Of course. You talk about entirely liquid, but I'm not sure that Judge Hillstrap agreed with the entirely liquid. I think he said that it's liquid, but not entirely liquid. At least 50 percent of the polymer has to be liquid. So this is what goes back to the yellow brief, Your Honor, but I think is our position. There was a straw man put out that number 29, we argued, allegedly needed to be all liquid. We never said that. What we said is 24 in figure 2E needs to be liquid. What the judge confused was that characterization, which we note in the red brief at 26 in footnote 9 was not our position, but what I think the judge thought was, well, you're saying, Schlumberger, all of figure 2E needs to be liquid. That can't be right because there's propinter sand in there. That's a misstatement of our position. Our position was that the polymer needs to be liquid, and that's what the court found. I want to raise one other point, and this is the 50 percent point, Your Honor. I would refer the court to the appendix at 2421. What the court will see is that's a transcript from the claim construction hearing, and we've had some discussions about the waiver and those sorts of things, and what I want to make sure that the court sees is that the district court on 2429 expressly asked Interpol's counsel about this place, Judge Reyna, that you're asking about in column 8, and then the court said, well, look at the next sentence. When the degradable polymer becomes the continuous or external phase, the fraction of the degradable polymer will have increased to greater than 50 percent by volume. By volume, of course, means they're both liquids, and so the district court asked Interpol's counsel this during the hearing. What does Interpol's counsel say over the next page and a half? He says, well, this tells us that it's accumulated sufficiently so that we have a concentration of 50 percent by volume. The fraction of the degradable polymer would increase to greater than 50 percent, and then he says at line 18 on appendix 2422, that's what it means to be continuous, and then it says at line 21, what Your Honor pointed out in column 8 where it talks about the concentration is exactly the point. So this discussion about what it means to be continuous was raised with the district court by Interpol's counsel, and he affirmed in open court that that interpretation is correct. Now, to the extent my brother gets up and says, well, the court misunderstood what we meant by that, and we were talking about it doesn't necessarily have to be liquid, I would submit to the court to look at that component of the transcript and make its own judgment about that. But regardless, if there was an issue with the 50 percent, it was either expressly addressed by counsel during the trial or it should have been taken up afterwards. So let's go back. Your argument is that in the liquid phase that it cannot include any amount of solid polymer. There's no solid polymer. Our view is the polymer continuous liquid phase should be liquid polymer. It's all liquid. It's all liquid polymer. Where do you get the support for that, that it must be all liquid, that there cannot be any solid polymer? Well, sure. So where we get it from is from the claim language itself. And to be clear, there's numerous embodiments in the specification, many of which are unclaimed. Polymer phase, polymer continuous polymer phase. The only ones that are claimed are continuous liquid phase. And so what the specification describes... Can we just focus on the specific, put aside the claim language and just take as an assumption that if only because of the little dash between the word polymer and the word continuous, that I don't think that the claim language expressly indicates that the polymer has to be entirely liquid. So what else is there that pushes us in that direction? Sure. So if we look at column seven, lines 12 to 18, the one that I briefly already described, the polymer starts as a rigid solid, becomes a thermoplastic mass, then a sticky semi-solid, and then transitions into a viscous liquid. If we see column nine at lines 44 to 46, it talks about using softening agents or solvents to accelerate the polymer becoming a continuous phase of fluid. Fluid, obviously, is liquid. And then I would also submit to the five lines six to approximately 10, where it talks about the fracturing fluid used herein is quite different from fluids that are normally used in which the degradable polymer is dispersed in a liquid to increase the viscosity. Here, what we're doing is fundamentally different from that. You haven't cited anything that gives support that all polymer must be liquid, that there cannot be any solid polymer in the liquid phase. So, I believe, Your Honor, that those sites and the specs support a clean meaning. And additionally, the prosecution history in the two places where I've discussed, where the applicant was required to change polymer continuous phase to polymer continuous liquid phase, and where the applicant changed thermoplastic into viscous liquid. What the patent repeatedly talks about different embodiments, but the embodiment that's claimed, the polymer continuous liquid phase, it talks about solely in connection with it being a fluid or a liquid. And it talks about its transition from that rigid solid that starts out at the top of the wellbore and transitioning into a viscous liquid. Okay. Let's stop there because you're out of time. And let's hear on the prosecution. Thank you. You used up your time. You said you were not going to address the prosecution. If the court has no questions on the jurisdictional issue, then I would ask the court to affirm. Yes, we have a question. I'm sorry, one question. A couple. So, I'm just wondering, on page 821, the court, this is the district court's opinion, it says the person organizing on the art would understand that at least a percentage of the degradable polymer must change from a solid to a liquid. However, there's no requirement that all degradable polymer be in liquid form. If I agree with that, and I think that that's how this term was construed, and that it's consistent with the construction of the district court, why, I don't understand what the problem would be if, why it has to be the entirety of the polymer. Look, I don't pretend to tell the court it's business. It certainly needs to be substantially in liquid form. And the point you're raising, Your Honor, and you're questioning is, here's the problem. I think what Interpol is hoping to do is get a remand where it can argue that some metaphysical amount of collective polymers... Isn't there some sort of stipulation here? Well, so the problem with the stipulation is, again, relates to the issue. I mean, problem with the stipulation is we have a general judgment that was entered over our objection. In my opinion, it's no different than a general jury verdict. If we had had a situation where Interpol had refused to issue special interrogatories to a jury, asked for a general verdict, and there were three alternative bases for us to have a finding of non-infringement, this court wouldn't entertain it coming here and saying there's not substantial evidence for one of those, and therefore you should remand. That's effectively what they've done here. They, by choice, sought a general judgment that doesn't differentiate the basis of non-infringement of these three different components of the claim construction, each of which we believe is independently dispositive. And they've come up here, and they're either, which I don't believe because these are knowledgeable counselors, know this court's law, they're either asking for an advisory verdict on two of those components, or those components are dispositive. So I would your honor, substantially liquid, majority liquid, but what we have to avoid is the construction that creates purported fact issue out of metaphysical insignificant amounts of polymer. And if you look at the appendix, if you look at the appendix at 3153 slide 24, it's about 11 minutes and 40 seconds in, what you see is part of the tech tutorial. This is Interpol's tech tutorial. This isn't a picture from a treatise. This isn't a picture from the patent. This is from our product literature. And what I think is unfair on the equity, your honor, is the court, it's referenced in the record, although it's not expressly in the record, but before discovery even started in this case, before there was any discovery whatsoever, we went to Interpol with a detailed sworn declaration, 66 paragraphs, 14 exhibits, and we provided 135 pounds of polymer for them to test. And we explained why we believed under any kind of a reasonable construction, this case shouldn't go forward. So to the extent the court says, well, maybe there wasn't enough fact development. I'm not sure that the parties knew enough to understand how to clarify the claim construction issue. So these three separate components were clear enough. That's just not true. We did that as officers of the court to try to questions about the specificity of judgment are issues for the federal circuit, not for you, judge. And then to come here and say, well, these questions about claim construction, to the extent there's ambiguity, you should remand. And those are fact issues for the jury. I would submit that that's not the right result. The right result is each of these three independent bases should be requirements and separate bases for the court to affirm. Thank you. Thank you. Mr. Courtney, you have four minutes. I'm going to show you four minutes. Thank you, Your Honor. I'd like to begin kind of at the end there on the stipulation. Counsel for the appellee repeatedly said there's three separate issues here. There's not. There's one construction with these interrelated issues. There has to be polymer in a liquid state that 50 percent by volume of the fluid that does the fraction. These are all interrelated. Just to double check something, you would agree, would you not, that if the claim construction were revised and that summary judgment remains a procedural possibility, that certain elements actually where the question would be, what does the evidence show as opposed to what you agreed to? Certainly, Your Honor. I will note discovery had not closed in this case. So we would expect discovery to conclude. And then if we don't have a light to stand on, we expect a rapid summary judgment motion. Can I just ask you on the merits? And I may have misunderstood Mr. Brandt. But if I understood, here's what I guess I want you to address. I sort of understood him to say continuous and external are the same. Once the polymer is continuous, and that is playing on the language of the claim, then it is also therefore external. And if the whole thing is liquid in character, the thing that's external must be liquid in character too. Therefore, the continuous polymer must be liquid in character. I think that is the logic that the appellee is presenting. I think there's several problems with it. I think the first is that I would challenge the appellee and we challenge in the briefs to identify what it thinks phase means in this claim. Because as far as I can tell, appellee's position reads identically if the claim read polymer continuous liquid as if it reads polymer continuous liquid phase. This is why we think structure is so important. The claim here is to a polymer continuous liquid phase. The patent teaches that's broader than just a single element. Judge Stoll, you had some question about why the appellee is so vigilant to try to argue that it must be entirely liquid, and this is the nature of its difficulty. Patentee's definitions point to phase and say a phase must be homogenous. So if the patentee thinks this claim is to polymer continuous liquid and phase just means homogenous, so homogenous polymer continuous liquid, then that leaves no room for anything that's not polymer and not liquid. I asked about Judge Goldstrap's interpretation. Do you think that interpretation means that the entire polymer must be liquid? Certainly, Judge Goldstrap's holding was that 50% had to be liquid. We don't agree with that, and I'd like to have some discussion. I just wanted to make sure I understood. I'd like to have some discussion. Two points on that. Number one, I think counsel for the appellee represented that column eight with a 50%. He said that's all liquid. That's not what column eight says, and I would hope the panel would review column eight. Column eight says the particles there are closely packing, and it is upon that closely packing that you get the 50%. It does not say liquid anywhere in column eight. The words liquid polymer are nowhere in this patent. Can I just return you to the question that I asked because I'm not quite getting the answer. Do you disagree that if there is this external material that's the in this external thing behaves like a liquid that that wrapping has to be liquid? The claim says liquid phase. It requires a phase that is liquid. It requires that there be continuous polymer. It does not require that that polymer be liquid. It is possible, and the patent teaches how to have continuous solid. The 50% that the district court erroneously over-relied on, it imported this embodiment into the specification, is expressly describing particles. Our presentation at the Markman hearing was expressly explaining to Judge Gilstrap, yes, that 50% limitation is present in the patent, but it is not describing that material becoming liquid, and my colleague said that it describes the continuous, right? It certainly, those are the words the patent uses. It says it describes continuous, but the patent is saying these are particles that are becoming continuous. In this embodiment, are those particles reaching a volume percentage of 50%? Yes. Are they liquid? No. I think, respectfully, there's a suggestion that we were saying the judge misunderstood this discussion. I think Appolita misunderstands. There's no requirement that the polymer be liquid, but it could all be liquid. There's no requirement, right? There's no requirement in the claim, and there's no teaching anywhere in the patent that the polymer is all liquid. Is it possible to meet these claim limitations and not have some of the polymer be liquid since the claim is requiring that this phase be displaced into the wellbore, from the wellbore into the formation at pressure greater than the fracturing pressure of the formation? Is it even possible to accomplish that if the polymer isn't at least part liquid? I think it's as a matter of- Considering that it's continuous, meaning that it's wrapping around liquid. I think as a matter of claim interpretation, it is possible. The claim does not restrict the state of the polymer. As a technical matter- To be honest, as a technical matter, when this patent talks about how this is being used as a fracturing fluid, and even talks about how when it's a gel, it might not move like you want it to. I'm wondering whether what your proposition makes sense scientifically. I think as a technical matter, the patentee, my client, believed it was possible, and I also believe it's possible. However, I am not an oil field expert, and as this case moves forward to trial, I have no doubt there'll be fact-finding on this point. I'd like to briefly discuss this point that- You're out of time, so why don't you sum up? Sure. I think the final point I'll make, we heard that after the counsel for the appellee relied heavily on column eight, he said, all that stuff in column eight's unclaimed embodiments. Respectfully, that's not a self-proving assertion. I think to demonstrate that these are unclaimed embodiments, the burden would be on the appellee to show some language of restriction or exclusion, and that's not present here. This court, from GE Lighting and other cases, generally construes claims to cover the description. There's extensive description of polymer not degrading. It's in our table. Column 13, the middle of column 13, expressly describes a zero degradation embodiment, where there is no degradation of the polymer at any time while it's in the